**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

_____

SIMONA OANA OLSON,

      Petitioner,

vs.                                                                  Civil Action No. 3:13-cv-0138
                                                                     Magistrate Juliet E. Griffin
OLIVER WILLIAM OLSON,

      Respondent.

_____

**JOINT INITIAL CASE MANAGEMENT ORDER**
_____

The following Joint Initial Case Management Order is hereby adopted by the Court.

1.     **<u>Parties.</u>**  The parties to this action are Petitioner Simona Oana Olson, hereinafter referred to as "Mother," and Respondent Oliver William Olson, hereinafter referred to as "Father."

2.     **<u>Jurisdiction</u>**.  There is no dispute that this Court has jurisdiction pursuant to the International Child Abduction Remedies Act (ICARA), 42 U.S.C. 11603 (1995), and "The Convention on the Civil Aspects of International Child Abduction, done at The Hague on October 25, 1980" (hereinafter "The Convention").

3. **Status of Service of Process**. Personal service of process of Mother's "Verified Petition for Return of Children to Hungary and for Immediate Issuance of Show Cause Order to Respondent" (hereinafter "Mother's Petition") was obtained upon Father by private process server James Richard Werner of 528 Rosedale Avenue, Nashville, TN, 37211, on February 26, 2013. A Return of Service was filed with the Court on March 11, 2013.

4. **Status of Responsive Pleadings**. Father filed his Answer to the Verified Petition on March 19, 2013; however, the parties agree that Father's Amended Answer shall be filed no later than April 15, 2013.

5. **Summary of Mother's Theory of the Case**. Mother alleges that the parties' children, twin 13 year old boys, were habitual residents of Hungary when Father wrongfully retained them in the United States after their trip here to visit paternal grandparents, that no exception under The Convention exists upon which Father can lawfully retain the children in the United States, and that the children should be promptly ordered returned to Hungary for a Hungarian judicial determination as to custody and visitation.

6. **Summary of Father's Theory of the Case**. Father alleges that the children living in the U.S. with Father is not a wrongful abduction or retention, that Mother consented to the children living with Father in Tennessee, and that she consented to the children enrolling in school in Tennessee. Father alleges that the parties and children are citizens of the U.S. and that Mother and children have dual citizenship in Romania. Father further alleges that neither the parties nor the children have citizenship in Hungary, nor does Father or children have the right to live in

Hungary since their Hungarian visas have already expired. Father alleges that Hungary is not the children's country of habitual residence. Father asserts the affirmative defenses that the children are well-settled and that their preference is to remain living in the US, in Tennessee. Father alleges that the children are sufficiently mature to express their preference to this Court, and that Mother cannot meet her burden of proof on the merits of her petition. Father asserts the additional affirmative defense that Mother consented to the children remaining in Tennessee and in the United States with the Father.

7. **Legal Issues Before the Court**. The legal issues before the Court are as follows:

A. Authentication of Mother's Documents. Whether Mother's documents related to her application to the Central United States Authority or Mother's Petition filed with this Court need not be technically authenticated pursuant to 42 U.S.C. Section 11605.

B. Mother's Proof of Hungarian Law. Whether the Court may take judicial notice of Hungarian Law on the topic of Mother's parenting rights pursuant to The Convention, Article 14, which states as follows:

The judicial or administrative authorities of the requested State [the United States] may take notice directly of the law of, and of the judicial or administrative decisions, formally recognized or not in the State of the habitual residence of the child [Hungary], without recourse to the specific procedures for the proof of that law or for the recognition of foreign decisions which would otherwise be applicable.

C. Whether Mother proves the following by a preponderance of the evidence:

i. That prior to Father's wrongful retention of the children, the children were habitual residents of Hungary;

ii.   That Father breached Mother's custody rights under Hungarian law;

iii.  That Mother was exercising her rights of custody at the time of Father's wrongful retention.

D.   <u>Whether Father proves any of the following affirmative defenses</u>:

i.    That, by a preponderance of the evidence, more than 1 year has passed since the wrongful retention of the children in the United States, and if so, that the children have become 'well-settled' in the United States.

ii.   That, by a preponderance of the evidence, Mother was not exercising her rights of custody at the time of the retention.

iii.  That, by a preponderance of the evidence, Mother consented to or acquiesced in Father's retention of the children.

iv.   That, by a preponderance of the evidence, the children object to being returned to Hungary and that the children have attained an age and degree of maturity such that it is appropriate to take the children's views into account.

v.    That, by a showing of clear and convincing evidence, the children will face grave danger of physical or psychological harm upon their return to Hungary;

vi.   That, by a showing of clear and convincing evidence, the children would be denied basic human rights and fundamental freedoms if they were returned to Hungary.

E.   <u>Whether the Court finds the following</u>:

i.    That even if Father meets his burden of proof for 1 or more of the above affirmative

defenses, should the children nevertheless be returned to Hungary, consistent with the furthering of the aims of The Convention.

8. **Issues Resolved**. The following issues have been resolved by stipulation:

A. The parties have been married for 16 years as of the filing of this order.

B. Both children are under the age of 16 years, both children have dual citizenship in the United States and Romania, and both children have valid United States passports.

C. Father has provided his own United States passport and the children's United States passports to his counsel, and these shall be held in his counsel's office pending further orders of the Court.

D. Neither parent shall apply for or otherwise obtain any replacement and/or additional passports or any other travel documentation for the minor children from any country.

E. Neither party shall discuss the pending litigation or the underlying issues of the litigation with the children or within the hearing of the children.

F. Except as provided in paragraph I below, neither parent shall remove the children from the jurisdiction of this Court nor shall either parent conceal the whereabouts of the children from the other parent.

G. Except as provided in paragraph I below, should either parent remove the children or cause the children to be removed from the jurisdiction of this Court, then the Court shall issue a warrant for the arrest of said parent and a notice for appearance at a contempt proceeding.

H. Father shall make the children available to communicate with Mother via the Internet (Skype) and telephone.

I. Father shall be entitled to take the children to his nephew's wedding in California scheduled for May 25, 2013, and to have a vacation in California with the minor children from

May 22, 2013 (or the conclusion of the trial which begins on May 21, 2013) to last no later than June 9, 2013.

J.     Father shall pay for Mother to travel to Tennessee to visit with the children beginning at 9:00 a.m. on the morning of Sunday, May 11, 2013, when Father drops off the children to Mother, through Monday, May 20, 2013, when Mother drops off the children to school, and the following shall apply to the visit:

    i.      Mother shall have uninterrupted time with the children during this visit.

    ii.     Father shall have telephone access to the children during this visit at reasonable times and for reasonable durations. Mother shall not prevent the children from having telephone access to Father during this visit.

    iii.    Father shall pay for Mother's round-trip flight.

    iv.    Father shall provide lodging and a vehicle for Mother during the visit. A non-family member shall either drive Mother from the airport to the residence located at 3445 Highway 76, Cottontown, TN, 38017, or a non-family member shall have a vehicle at the airport upon Mother's arrival and will lead Mother to the residence. Mother shall have exclusive, unrestricted and un-monitored use of the residence and the vehicle during this visit.

    v.     Father shall provide Mother with the children's EBT card for up to $200 for groceries for the visit.

    vi.    If the children have not yet been released from school for the summer, then the children shall attend all required classes during this visit. Their last day of school is May 24, 2013.

    vii.   The parties shall not discuss this litigation with the children, but they shall each advise the children of their upcoming visit with Mother and the date trial in this matter is to be held.

9. **Initial Disclosures and Discovery**.  The following provisions shall apply

to disclosures and discovery:

A.      Initial disclosures shall be made by April 15, 2013.

B.      Father shall have as soon as reasonably possible after April 15, 2013, in which to identify any expert witnesses he may use at the trial of this matter and to produce any expert reports.

C.      Mother shall have until April 29, 2013 (or at least one week after Father's providing of his expert report), in which to identify any expert witnesses she may use at the trial of this matter and to produce any expert reports.

D.      Father shall produce the following documents to Mother no later than April 15, 2013, with the exception of xiv which Father shall produce by April 19, 2013 and xvi which Father shall produce by April 29, 2013:

   i.      Copies of the children's original plane tickets for their travel to the United States in 2012;

   ii.     Documents showing all changes to the children's plane tickets' original return date of September 19, 2012;

   iii.    Documents showing the date Father made application for any medical or dental coverage for the children in the United States;

   iv.     A copy of any application for insurance coverage utilized for the children in the United States;

   v.      Documents showing the date that insurance coverage was actually procured for the children in the United States;

   vi.     Documents showing the date the children were enrolled in Tennessee schools;

vii.    Copies of the documents enrolling the children in Tennessee schools;

viii.    All exhibits to Father's October 22, 2012, letter to U.S. Central Authority;

ix.    Documents showing date(s) when Father consulted or retained Tennessee counsel (excluding any confidential information other than dates);

x.    Any documents supporting Father's claim that the parties have maintained a residence in Tennessee;

xi.    Copies of any and all employment applications sent out by Father to U.S. employers for the time period of 2009 through the present;

xii.    If Father is or has been employed since June 2012, all documents showing his hire date, position, salary, benefits, etc.;

xiii.    If Father or the children are covered by any governmental benefits of any nature not already addressed in paragraph 10 of this Order, then Father shall provide copies of the applications utilized as well as documents showing any subsequent acceptance into such a program;

xiv.    Any other exchange between the parties, by any medium, that Father may use in trial;

xv.    All documents regarding the September 2012 termination of Father's employment in Romania;

xvi.    A complete copy of the entire counseling file for each child for any counselor the children have seen in Tennessee, including but not limited to, intake forms, the treatment notes, summaries, billing records, and attendance records.

E.  Except where governed by the Court's Order (DE 10), Mother shall produce the following documents to Father no later than April 22, 2013:

  i.  Copy of Mother's current Hungarian visa and copy(ies) of all Mother's prior Hungarian visa(s).

  ii.  Copies of all correspondence and/or written documentation which proves Mother's allegation that she did not provide consent for the children to remain with Father in Tennessee and/or the U.S.

  iii.  Copies of all correspondence or other proof which proves Mother's theory that the children prefer to live in Hungary and/or with Mother.

  iv.  Copies of all correspondence or other proof which proves Mother's allegations in her Petition that "Mother has had only minimal telephone contact with the twins" and that "Father has been refusing Mother all telephone contact with the children."

  v.  Copies of all written documentation supporting Mother's theory that the children are not sufficiently mature to testify about their individual preferences, related to this case.

  vi.  Copy of Mother's Norwegian visa and/or immigration paperwork related to Mother living and/or working in Norway.

  vii.  Copy of any other application Mother has made to any country for visa, passport, or other paperwork for the purpose of living and/or working in that country legally.

  viii.  Copy of all job applications and inquiries Mother made for any job in Norway in 2012 and/or 2013.

  ix.  Copy of all job applications and inquiries Mother made for any job in Romania in 2012 and/or 2013.

  x.  Copy of all job applications and inquiries Mother made for any job in the U.S. in 2012 and/or 2013.

  xi.  Copies of CV(s) and report(s) of any expert

Mother intends to rely on at the trial of this case, including (a) a list of other cases (include court name, country, and docket number) where the person testified as an expert witness, and list what capacity that person testified as an expert witness; (b) a list of all publications by that person; and (c) a list of all presentations by and classes attended by that person, in his or her field of expertise.

xii.    Copies of all Hungarian laws Mother intends to rely on at the trial of this case.

xiii.    Copies of all applications made in 2012 or 2013 by anyone in the family to renew the Hungarian visa(s) of either Mother, Father, or either child.

xiv.    Copy of Mother's lease and/or any mortgage payments made for her current residence.

xv.    Copy of Mother's certificate of graduation in 2012 and/or a copy of her degree obtained in 2012.

xvi.    Copies of Mother's last six (6) months of paystubs or other proof of income from any source.

xvii.    Copy of Mother's current employment agreement(s) and/or contract(s) and/or offer letter(s) from current employer(s), including if employed by more than one employer.

F.    In the event the parties have a dispute regarding discovery, or the herein order, in the future, counsel agrees to make a good faith effort to resolve any such dispute, and if unable to do so, the parties will promptly schedule a telephone conference with the Magistrate Judge, and the resolution of said dispute shall be expedited in order to best comply with The Convention, Article 11, requiring the handling of these matters expeditiously.

10.    **Dispositive Motions**.    No dispositive motions are appropriate in this cause due to the expedited setting of trial.

11.    **Related Cases**.  It is noted that Father has filed a divorce action in the

Circuit Court of Sumner County, TN, on September 21, 2012, under docket number 2012-CV-1096.

12.     **Expedited Trial Setting**.  An expedited trial setting shall be granted in compliance with the expedited nature of The Convention, and it is noted that the parties anticipate this bench trial taking approximately 1 to 2 days. Said expedited trial date is May 21, 2013, at 9:00 a.m., before the Honorable Kevin H. Sharp.

13.     **Alternative Dispute Resolution**.  This cause is not appropriate for alternative dispute resolution.

**IT IS SO ORDERED:**

_____
**JULIET E. GRIFFIN**
United States Magistrate Judge

APPROVED FOR ENTRY:

/s/   C. Suzanne Landers
C. Suzanne Landers (#11425)
Lucie K. Brackin (#022031)
Attorneys for Petitioner/Mother
65 Union Avenue, Ninth Floor
Memphis, Tennessee 38103
(901) 522-1010
suzanne@landersfirm.com
lbrackin@landersfirm.com

/s/  Rebecca K. McKelvey
Rebecca K. McKelvey, Esq. (#25562)
Attorney for Respondent/Father
401 Commerce Street, Ste. 800
Nashville, TN 37219-2376
(615) 244-5200
rebecca.mckelvey@stites.com