UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| SIMONA OANA OLSON, | ) | |
| | ) | |
| Petitioner, | ) | No. 3:13-cv-00138 |
| | ) | |
| v. | ) | Judge Sharp |
| | ) | |
| OLIVER WILLIAM OLSON, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM

Petitioner, Simona Oana Olson, filed a *Motion for Attorneys Fees, Suit Expenses, and Costs* (Docket Entry No. 57), to which Respondent, Oliver William Olson, filed a response in opposition (Docket Entry No. 59) and Petitioner filed a reply (Docket Entry No. 62). The Court has reviewed all the papers filed in support of, and in opposition to, Petitioner's motion. For the reasons discussed herein, Plaintiff's motion will be granted.

## I. RELEVANT PROCEDURAL HISTORY

This matter arose upon the Petition for Return of Children pursuant to the Hague Convention on the Civil Aspect of International Child Abduction (the "Hague Convention"), and the implementing legislation in the United States, the International Child Abduction Remedies Act ("ICARA"), set forth in 42 U.S.C. § 11601, *et seq.*

Petitioner requested this Court to enter an Order directing that the parties' minor children be returned to Hungary. She alleged that Respondent failed to return the children to the sovereign nation of Hungary on or about September 20, 2012 after a family visit to Tennessee, and wrongfully retained them in the United States. (Docket Entry No. 1, Verified Petition).

1

The Court held a bench trial in this matter on May 21-23, 2013, after which the parties were instructed to file post-trial briefs. Those briefs were filed on June 13, 2013.

On July 2, 2013, the Court granted the Verified Petition and ordered Petitioner to file "any motion for costs and fees, along with the required supporting documentation, within twenty-one (21) days from the date of this order." (Docket Entry No. 56). Petitioner filed the pending motion on July 16, 2013. (Docket Entry No. 57).

## II. ANALYSIS

Petitioner moves this Court for an award of attorneys' fees, suit expenses, and costs. (Docket Entry No. 57 at 1).

Under ICARA, "[a]ny court ordering the return of a child pursuant to an action brought under section 11603 of this title shall order the respondent to pay necessary expenses incurred by or on behalf of the petitioner, including court costs, legal fees, foster home or other care during the course of proceedings in the action, and transportation costs related to the return of the child, unless the respondent establishes that such order would be clearly inappropriate." 42 U.S.C. § 11607(b)(3).

The party seeking an award of attorney's fees must submit adequate evidence detailing the hours worked and the rates claimed. *Hensley v. Eckhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). Where the attorney's documentation is inadequate, or the claimed hours are duplicative or excessive, the court may reduce the award accordingly. *Wasniewski v. Grzelak-Johannsen*, 549 F.Supp.2d 965, 972 (N.D. Ohio 2008). "The goal is not to overcompensate counsel with a 'liberal' fee, but to award the 'reasonable' fee necessary to encourage competent lawyers to undertake the representation." *Id.*

Petitioner seeks attorneys' fees in the amount of $66,122.50. The amount of fees sought specifically for attorneys in Petitioner's motion is $62,167.50. This amount is calculated by multiplying the 100 hours[1] worked on this case by C. Suzanne Landers ("Landers"), by the hourly rate of $275.00 per hour; the 100 hours[2] worked on this case by Lucie K. Brackin ("Brackin"), times the hourly rate of $245.00 per hour; and the 41.50 hours worked on this case by Carrie Eaker Kerley ("Kerley"), by the hourly rate of $245.00 per hour (Docket Entry No. 57 at 2-3).

The amount of fees sought for paralegal time in the motion is $3,955.00. This amount is calculated by multiplying the 9.50 hours worked on this case by Kimberly Crews ("Crews"), by the hourly rate of $140.00 per hour; the .25 hours worked on this case by Trinity Morgan ("Morgan"), times the hourly rate of $140.00 per hour; and the 18.50 hours worked on this case by Connie Luke ("Luke"), by the hourly rate of $140.00 per hour (*Id.* at 3).

Respondent contends "that since Ms. Olson's attorneys represented her *pro bono*, it would be "clearly inappropriate" to give Ms. Olson an award or judgment of fees which she never actually incurred (for those above the few expenses she paid for out of pocket)". (Docket Entry No. 59 at 3).[3] Defendant continues, "Respondent's financial situation bars him from the ability to pay such an award." (*Id.*). Furthermore, Respondent claims the need to "sanction" him by an award of fees would be inappropriate. (*Id.* at 4). As to the actual billing statements,

---

[1] Landers claims to have expended 164.50 hours in this matter but suggests that only 100 of those hours be paid by Respondent.

[2] Brackin purports to have expended 153.25 hours in this matter but suggests that only 100 of those hours be paid by Respondent.

[3] The fact that a petitioner is represented by *pro bono* counsel does not provide a basis for disregarding the ICARA's fee provision. *Wasniewski v. Grzelak-Johannsen*, 549 F.Supp.2d 965, 970-71 (N.D. Ohio 2008).

Respondent argues "the hours billed by the attorneys" in this matter "are excessive, duplicative, and not all necessary to secure" the children's return to Hungary. (*Id.* at 7).

Petitioner claims the fees are indeed reasonable. She opines, her "counsel has already requested that they be awarded only a fraction of the time expended on this matter." (Docket Entry No. 62 at 7). Consequently, for Respondent's counsel "to then attempt to cherry-pick further reductions would be inequitable and defeat the goal of the Hague Convention, which is for attorneys who are willing to accept Hague cases *pro bono* to be paid for their services in reasonable sums." (*Id.*). As to Respondent's financial situation, Petitioner avers that "[he] unilaterally placed himself in the position of alleged pauper and should not now benefit from having done so." (*Id.* at 3).

Courts typically apply the lodestar method to calculate fees in cases arising under ICARA and the Hague Convention. *See, e.g., Wasniewski*, 549 F.Supp.2d at 972. "A reasonable fee is one that is adequately compensatory to attract competent counsel yet which avoids producing a windfall for lawyers." *Dowling v. Litton Loan Serv.*, *LP*, 320 Fed. Appx. 442, 446 (6th Cir. 2009) (quoting, *Geier v. Sundquist*, 372 F.3d 784, 791 (6th Cir. 2004). A determination of reasonableness begins with the "lodestar" method of calculation, *i.e.*, determining a reasonable fee based on a reasonable hourly rate and reasonable number of hours of service. The United States Supreme Court described the lodestar method in *Hensley v. Eckerhart*, 461 U.S. 424, 433, 76 L.Ed.2d 40, 103 S.Ct. 1933 (1983), as follows:

> The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services. The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed. Where the documentation of hours is inadequate, the district court may reduce the award accordingly.

A list of the factors to consider in establishing the lodestar fee and adjusting the fee was enunciated by the Fifth Circuit Court of Appeals in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974). The Johnson factors have now become part of the settled law of lodestar analysis under both the United States Supreme Court and Sixth Circuit decisions. These factors include:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Hensley*, 461 U.S. at 430 n.4; *Blanchard v. Bergeron*, 489 U.S. 87, 92 n.5, 103 L.Ed.2d 67, 109 S.Ct. 939 (1989); *Reed v. Rhodes*, 179 F.3d 453 (6th Cir. 1999).

The Court has considered the aforementioned factors and concludes a reduction is proper in this case. In conjunction with the factors, the Court has likewise examined the sworn documentation provided by Respondent as to his financial situation. ICARA gives courts the discretion to reduce or even eliminate a respondent's obligation to pay a prevailing petitioner's attorney's fees and costs where such an award "would be clearly inappropriate." 42 U.S.C. § 11607(b)(3).

After careful consideration of the relevant factors, the Court finds (until just a few months ago)[4] Respondent was barely able to absorb the necessarily minimal expenses of everyday living. Although the Court is aware Respondent has been offered a full-time

---

[4] On November 25, 2013, Respondent filed with the Court an offer of employment letter from Maastricht School of Management in Maastricht, Netherlands. *See* (Docket Entry No. 65).

employment position,[5] it finds that he is incapable of paying the amount of fees requested and it would be "clearly inappropriate" to enter a judgment against him for the full sum.  *See* 42 U.S.C § 11607(b)(3).

Based on a thorough review of the information and supporting documents before the Court, in conjunction with an analysis of the aforementioned lodestar factors, the will reduce the overall legal fees by forty percent (40%).  Therefore, Petitioner shall be awarded $39,673.50 for reasonable attorneys' fees.

In addition to the attorneys' fees, Petitioner seeks expenses incurred during the course of litigation in the amount of $14,307.33, which include expert fees of John Ciocca ("Ciocca") in the amount of $7,250.00.  (Docket Entry No. 57 at 4).  The Court finds Petitioner has failed to show that the expert fees of Ciocca were necessary expenses in this case, nor has she shown that such expenses were reasonable.  Consequently, the Court will not include these expenses in Petitioner's award.

Although Petitioner claims Respondent is obligated to pay the entire expense amount sought, Respondent insists, if anything, "the restorative intent should be limited to [those expenses Petitioner has actually paid to counsel]" – which is (as of the date of trial) the payment of an expense retainer in the amount of $2,000.00 and a retainer of $1,200.00 to her expert, which totals $3,200.00.  (Docket Entry No. 59 at 4).  Petitioner, in contrast, argues she is on a monthly payment plan and is "fully obligated by contract for total expenses of $14,307.33." (Docket Entry No. 62 at 3).  After adjusting the expenses to reflect the deduction of expert fees, the Court finds that Petitioner shall be awarded costs in the amount of $7,057.33.

---

[5] Respondent has a "negative net worth."  He hopes to use the earnings from his new position "to pay off the family's debt, all incurred during the marriage . . .," which totals almost $200,000.00.  (Docket Entry No. 64 at ¶¶ 7-8).

## III. CONCLUSION

For all of the reasons stated, *Petitioner's Motion for Attorneys Fees, Suit Expenses, and Costs* (Docket Entry No. 57) is hereby GRANTED. Petitioner shall be awarded $39,673.50 in attorneys' fees and $7,057.33 in costs in this matter. Respondent shall pay such award directly to Petitioner's counsel.

An appropriate Order shall be entered.

_____
KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE